**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| CAITLIN DOHENY, as personal representative and administrator of THE ESTATE OF THOMAS DOHENY, <br><br>Plaintiff, <br><br>vs. <br><br>BILL PRIM, SHERIFF OF MCHENRY COUNTY and UNKNOWN MCHENRY COUNTY CORRECTIONAL OFFICERS 1-12, <br><br>Defendants. | No. 3:20-cv-50138 |

**PLAINTIFF'S THIRD AMENDED COMPLAINT**

NOW COMES Plaintiff, CAITLIN DOHENY as personal representative and administrator of THE ESTATE OF THOMAS DOHENY, by and through her attorneys, The Gooch Firm and Noonan, Perillo & Thut, and as and for her Third Amended Complaint against Defendants, BILL PRIM, SHERIFF OF MCHENRY COUNTY and UNKNOWN MCHENRY COUNTY CORRECTIONAL OFFICERS 1-12, states as follows:

**PARTIES**

1. The Plaintiff's decedent, Thomas Doheny, was prior to his death on November 17, 2017, a resident of McHenry County, Illinois, residing in Barrington Hills, Illinois.

2. Plaintiff, CAITLIN DOHENY is the lawfully appointment personal representative of the Estate of Thomas Doheny, serving as its administrator.

3. Defendant BILL PRIM is the duly elected Sheriff of McHenry County, Illinois. Defendant Prim is responsible for the administration of the McHenry County Jail with final policy making authority over jail operations.

4. Defendants Unknown Correctional officers 1-12 are duly appointed Sheriffs' Deputies charged with the day to day supervision and oversight of inmates incarcerated at the McHenry County Jail. Plaintiff does not know the identities of the Correctional officers on duty at the time of the death of Plaintiffs' decedent.

## JURISDICTION

5. Plaintiff brings this cause of action pursuant to Section 1983 of the United States Civil Rights Act (42 USC 1983). As such this Court has jurisdiction to adjudicate this federal question pursuant to 28 USC 1331. This matter was initially timely filed in the Circuit Court of the Twenty Second Judicial Circuit McHenry County, Illinois as Case No. 19 LA 367 and removed to this Court on April 20,2020.

## VENUE

6. This cause of action arose in the McHenry County Jail in Woodstock, Illinois. Venue is proper in the United States District Court for the Northern District of Illinois, Western Division.

## CAUSE OF ACTION

7. Thomas Doheny and his former spouse Elizabeth Doheny had, prior to the time of his death, been embroiled in what could be best described as a tenacious and bitter divorce, whereby each party maintained various rights and claims against the other.

8. Nevertheless, prior to November 17, 2017, Elizabeth Doheny, the former spouse of Thomas Doheny, had asserted numerous rights against Thomas Doheny for the failure to pay child support and maintenance as ordered by the Court, amounting to a sum of money well in excess of $100,000.00.

9. At the time, the decedent asserted that he was unemployed, having had his employment terminated by a family owned and controlled business and was unable to pay all past-due amounts of child support and maintenance.

10. Prior to the termination of his employment, Thomas Doheny, enjoyed a fairly lavish lifestyle residing in Barrington Hills, Illinois and elsewhere and earning substantial income well in excess of $300,000.00 per year.

11. Despite repeated warnings by the Court, Thomas Doheny refused to pay the aforesaid support and maintenance obligations and pursuant to a lawful Order of Court was held in Civil Contempt of Court and incarcerated in the McHenry County Jail.

12. At the time of his incarceration in the McHenry County Jail, the aforesaid jail was administrated and controlled by the duly elected Sheriff and Jailor of McHenry County, Illinois Defendant BILL PRIM.

13. At the time of the death of Thomas Doheny, as further set forth below, the aforesaid jail was being administered on a minute to minute basis by correctional officers identified only as Officers 1-12. The exact identities of these individuals are presently unknown.

14. The aforesaid correctional officers worked ultimately under the direction and control of Sheriff and Jailor of McHenry County, BILL PRIM. Defendant Prim controlled the number of correctional officers and jail staff working at the Jail as well as their activities while on duty, he also promulgated rules and regulations under which the correctional officers and staff performed their duties.

15. At the time of the Plaintiff-decedents' incarceration he was not subjected administrative incarceration or any type of suicide watch, but was instead incarcerated within the general population of the McHenry County Jail.

16. At the same time the McHenry County Jail had numerous inmates: pending criminal detainees awaiting trial, sentenced criminals awaiting transportation to the Department of Corrections, and more importantly numerous incarcerated individuals being held by the United States government pursuant to various immigration procedures all for the profit of McHenry County.

17. As aforesaid McHenry County has entered into contracts with the United States of America for the incarceration of human beings not accused of a particular crime and not sentenced for a particular crime but being held indefinitely on immigration holds while awaiting their deportation from the United States of America. McHenry County received a bounty for each and every one of the aforesaid individuals placed on immigration holds but as a result the McHenry County Jail became over-crowded. Upon information and belief Plaintiff DOHENY alleges that as a result of the addition of individuals on immigration holds there were an insufficient number of correctional officers to maintain and control the population of McHenry County Jail.

18. At the time of the incarceration of Thomas Doheny, Defendant BILL PRIM made the intentional decision not to increase the amount of personnel to properly supervise and control the population of the McHenry County Jail.

19. At the time of his incarceration Thomas Doheny was exhibiting numerous symptoms of severe depression and was despondent in all ways regarding his life and future, complaining of physical pain and other maladies for which he was prescribed "aspirin".

20. At the time of his incarceration and thereafter Thomas Doheny should have been required to submit to a psychiatric evaluation and isolation from the general population together with close supervision. However, as aforesaid, Thomas Doheny was placed in the general population of the jail.

21. Thomas Doheny's movement within the jail and his day to day activities should have been closely monitored by the Defendants named herein or their subordinates as there were numerous video cameras as well as audio surveillance of all telephone calls. Nevertheless, Thomas Doheny's activities within the jail and particularly his telephone calls were largely ignored by the Defendants and/or their subordinates as a result of the inadequate staffing of the McHenry County Jail.

22. During numerous telephone calls, Thomas Doheny would have been heard to be giving away numerous valuable items of personal property or attempting to make those gifts without value received to numerous friends particularly leading up to the days immediately before his self-inflicted death.

23. Plaintiff alleges upon information and belief based on the review of various bits of information including reports and inmate interviews that on the day of Thomas Doheny's death, he was seen removing a garbage bag from a container from the so-called "day room" of the jail and returning to his cell.

24. Thereafter Thomas Doheny placed the garbage bag over his head and tied it to his neck with a t-shirt and ultimately, with his hands tied with socks, succeeded in suffocating himself in his cell at approximately 8:00pm on the date in question.

25. At 8:00pm on the date in question there was a medicine call whereby the nurse on duty handed out medications to all inmates authorized to receive them including prescription medications for Thomas Doheny.

26. Thomas Doheny did not attend the aforesaid medicine distribution and had not attended it for a period of time in excess of ten minutes.

27. As a result of inadequate staffing the Defendants, did not send a correctional officer to Thomas Doheny's cell, instead Defendants instructed an inmate to go to Thomas Doheny's cell and bring him to the medicine distribution point.

28. Had a correctional officer gone immediately to Thomas Doheny's cell the ultimate result would have been different as Thomas Doheny by then had placed the garbage bag over his head and was in the process of suffocating himself.

29. An inmate who went to Thomas Doheny's cell noticed the garbage bag on his head and the plastic material sucked into Thomas Doheny's mouth.

30. The inmate left Thomas Doheny's cell and advised, in apparently a loud voice, what he had discovered.

31. A female nurse immediately went to Thomas Doheny's cell but was unable, because of Thomas Doheny's size, to remove him from his bunk and place him on the floor in order to begin chest compressions to save Thomas Doheny's life.

32. As a result of the inadequate staffing the correctional officials did not immediately go to Thomas Doheny's cell, instead correctional officials began a "lockdown" procedure to secure all inmates prior to going to Thomas Doheny's cell.

33. At some time after the lockdown procedure the aforesaid Defendants contacted the Woodstock Fire Department requesting an "EMS" response.

34. By the time of the aforesaid response Thomas Doheny's was for all intents and purposes dead although heart monitors attached by the aforesaid personal indicated for a time there were some heart rhythms present.

35. The inadequate staffing at the McHenry County Jail did not allow for an urgent medical response causing harm to Thomas Doheny which greatly diminished his chances of survival.

36. Due to the delay occasioned by the inadequate staffing of the McHenry County Jail herein, Thomas Doheny ultimately perished and was declared dead sometime later at a local hospital.

37. The overcrowding of the McHenry County Jail as a result of the Defendants acceptance and incarceration of numerous individuals on immigration holds without an attendant increase in staffing of the jail placed the Plaintiff's decedent at a substantial risk of serious harm.

38. Defendants failed to take reasonable measures to alleviate the risk of increasing the population of the McHenry County Jail without proper supervision by an adequate amount of staff.

39. The Defendants intentional decision to increase the population of the McHenry County Jail with individuals on U.S. government immigration holds without increasing the jail staff resulted in the dilatory performance of the Defendant Correctional Officers on duty at the McHenry County Jail and directly caused the death of Thomas Doheny.

40. At all times material hereto, there was in full force and effect section 1983 of the United States Civil Rights Act (42 U.S.C. Sec. 1983) which states as follows:

    "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

41. The Defendants herein through incarcerating the Plaintiff's decedent were acting under the color of state law.

42. The actions and omissions of the Defendants as aforesaid being so egregious have deprived the Plaintiff's decedent of his Due Process right to medical care and proper supervision pursuant to the 14th Amendment of the United States Constitution.

43. As a direct and proximate result of the violation of the Civil Rights of Thomas Doheny as aforesaid Mr. Doheny experienced extreme mental and physical pain and suffering which ultimately resulted in his death.

44. The intentional actions of the Defendants as aforesaid were reckless and in callous indifference to the federally protected due process rights of Plaintiff's decedent entitling Plaintiff to an award of actual and punitive damages.

8

WHEREFORE Plaintiff prays this Honorable Court enter a judgment in their favor and against the Defendants in an amount in excess of $100,000.00, together with the costs of bringing this action, and a reasonable amount of attorney's fees and punitive damages pursuant to 42 U.S.C. Sec. 1983.

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.

Respectfully submitted
on behalf of Plaintiff,

/s/ Thomas W. Gooch, III

/s/ C. Jeffrey Thut

THE GOOCH FIRM
209 S. Main Street
Wauconda, Illinois 60084
847.526.0110
ARDC No. 3123355
gooch@goochfirm.com
office@goochfirm.com

C. Jeffrey Thut
Noonan, Perillo & Thut
ARDC No. 6188219
25 N. County Street
Waukegan, IL 60085
P: 847-244-0111
jthut@npt-law.com
mmckown@npt-law.com