IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| CAITLIN DOHENY, as personal representative and administrator of the Estate of Thomas Doheny, <br><br> Plaintiff, <br><br> v. <br><br> BILL PRIM, Sheriff of McHenry County, Illinois, and UNKNOWN CORRECTIONAL OFFICERS 1-12 <br><br> Defendants. | Case No. 3:20-cv-50138 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

On November 17, 2017, Thomas Doheny took his own life. He and his former spouse were going through a "tenacious and bitter divorce."[1] Dkt. 25, ¶ 7. As a result, his former spouse asserted that he owed her more than $100,000 in child support and maintenance. *Id.* ¶ 8. But he failed to pay. He had lost his job at a family-owned business that paid him well over $300,000 per year. *Id.* ¶¶ 9–10.

At the time of his death, Doheny was detained in the McHenry County Jail for civil contempt due to his failure to pay child support and maintenance—though the complaint does not allege how long he was in custody. *Id.* ¶ 11. He fell into a depression and complained of physical pain—for which he was given aspirin.[2] *Id.* ¶

---

[1] The allegations are taken from the third-amended complaint. Dkt. 25.
[2] The complaint does not make clear whether Doheny was offered or received any mental health services while in custody, though it does allege that he was not provided an evaluation from a psychiatrist. Dkt. 25, ¶ 20.

1

19. Caitlin Doheny, the personal representative and administrator of Doheny's estate ("the Estate"), contends Doheny should have been evaluated by a psychiatrist because of the alleged decline in his mental state. *Id.* ¶ 20. Doheny also made telephone calls to individuals outside of the prison in which he purportedly gave away some of his personal property. The Estate asserts that the jail should have monitored these calls and his movements in the jail and, therefore, should have known that Doheny was at risk of suicide—presumably because people who are depressed often give away their belongings before attempting suicide. *Id.* ¶¶ 21–22.

On the day of his death, Doheny was seen removing a garbage bag from a trash can in the day room. *Id.* ¶ 23. (By whom? We're not told.) He then used that bag in his suicide, which took place around 8 PM that night. *Id.* Medicine call—when inmates and detainees receive their prescribed medication—was around the same time. *Id.* ¶ 25. More than ten minutes of medicine call went by before Doheny's absence was noticed. *Id.* ¶ 26. At that time, a correctional officer told another inmate to go get Doheny and bring him to the medicine distribution point. *Id.* ¶ 27. On arrival at Doheny's cell, the inmate yelled for help. *Id.* ¶¶ 29–30. A female nurse immediately responded. But due to Doheny's size, she could not remove him from the bunk to attempt chest compressions. *Id.* ¶ 31. Because of the situation, the correctional officers instituted a lockdown procedure to secure all inmates and then contacted the Woodstock Fire Department to request an EMS response. *Id.* ¶¶ 32–33.

The Estate alleges that Doheny was "for all intents and purposes dead" before the EMS response, but that response personnel indicated that he had "some heart rhythms." *Id.* ¶ 34. The Estate argues that the jail's response was inadequate due to overcrowding and understaffing and that, as a result, Doheny was later pronounced dead at the hospital. *Id.* ¶ 36.

Caitlin Doheny, as personal representative and administrator of the Estate of Thomas Doheny, filed this lawsuit under 42 U.S.C. § 1983 claiming a violation of the Due Process Clause of the Fourteenth Amendment. She seemingly sues Bill Prim in his official capacity as the Sheriff and policymaker of the McHenry County Jail ("the Sheriff"). *Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir. 1991). The Estate also sued twelve unnamed correctional officers.[3] (Why a dozen? Again, we're not told.) The Sheriff then filed the present motion to dismiss. Dkt. 28.

**A. Analysis**

To defeat a motion to dismiss, the plaintiff must have alleged facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This means that a plaintiff's well-pleaded factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 622, 678 (2009). The Court accepts as true all of the plaintiff's well-pleaded allegations and views them in the light most favorable to the plaintiff. *Landmark Am. Ins. Co. v.*

---

[3] Plaintiff originally named McHenry County as a defendant, dkts. 1, 19, but the operative complaint does not include the County and, in response, Plaintiff notes that the County is no longer a defendant. Dkt. 31, at 2 ("Plaintiff has not named McHenry County, a body politic, as a party Defendant in its Third Amended Complaint.").

3

*Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019). The burden of persuasion on a motion to dismiss rests with the defendant. *Reyes v. City of Chicago*, 585 F. Supp. 2d 1010, 1017 (N.D. Ill. 2008) ("On a motion to dismiss, defendants have the burden of demonstrating the legal insufficiency of the complaint – not the plaintiffs or the court."). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.

The Sheriff argues that the complaint contains bare allegations and conclusions and is, therefore, speculative. Dkt. 29, at 3. The Sheriff further argues that he is entitled to qualified immunity, and that the Estate has not stated a *Monell* claim. *Id.* at 6, 9.

Because the Sheriff is correct that the Estate has not effectively pleaded a constitutional claim under § 1983, the Court does not consider the Sheriff's argument regarding qualified immunity. Similarly, because a constitutional injury is a core element of any *Monell* claim, the Estate's failure to adequately plead a constitutional injury renders his *Monell* claim ineffective. *J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020) (en banc) ("A primary guardrail is the threshold requirement of a plaintiff showing that a municipal policy or custom caused the constitutional injury."); *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1039 (7th Cir. 1998) ("[P]laintiffs must allege facts sufficient to show that the defendants deprived them of a right or an interest secured by the Constitution or laws of the United States and that the defendants were acting under color of state law.").

To begin with, the Court recognizes that the complaint does not make clear what the Estate's claim is. On the one hand, the complaint looks like a Fourteenth Amendment failure to protect from self-harm claim, and it at least references that amendment. Dkt. 25, ¶ 42. On the other hand, the Estate's response to the instant motion argues under the Eighth Amendment. Dkt. 31, at 5–6. In an effort to be thorough, the Court will address both possible claims.

### 1. Fourteenth Amendment – Failure to Protect

The Estate's claim under § 1983 could be construed as a claim for failure to protect from self-harm in violation of the Due Process Clause of the Fourteenth Amendment. "The obligation to intervene covers self-destructive behavior up to and including suicide." *Miranda v. Cnty. of Lake*, 900 F.3d 335, 349 (7th Cir. 2018). Five elements exist for a failure to protect from self-harm claim:

1. A *strong likelihood* existed that the decedent would seriously harm himself in the near future, but a mere possibility is not enough;

2. The defendant was aware of this strong likelihood, or strongly suspected it but refused to confirm it, which can be inferred if the risk was obvious;

3. The defendant consciously failed to take reasonable measures to prevent the serious self-harm, taking into account, among other things, whether the defendant had legitimate reasons related to safety or security for failing to take additional action;

4. The decedent would have survived if the defendant had not disregarded the risk; and,

5

    5. The defendant acted under color of law.

Seventh Circuit Pattern Jury Instructions 7.19 (rev. 2017). No doubt, a plaintiff need not plead facts to support each element, but she must plead enough facts to elevate her claim from speculative to plausible. Understanding the elements of the claim aids in that determination.

    In light of these elements, the Estate's complaint does not plausibly allege a failure to protect. The only element that would not be in serious question is the last. No one disputes that the defendants acted under color of law; one is the Sheriff and the other unnamed defendants were correctional officers. Other than that, none of the allegations, taken as true, come close to satisfying any other element. Again, the Court does not mean to imply that a complaint's allegations must satisfy every element. *Stumm v. Wilkie*, 796 F. App'x 292, 295 (7th Cir. 2021); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("Complaints need not plead law or match facts to every element of a legal theory."). But the allegations must do enough work to show that the belief in defendant's liability is based on something other than speculation, so that the claim is plausible.

    First, the Estate has not alleged anything to show a strong likelihood that Thomas Doheny was going to hurt himself. Many people experience depression, and many people give away items of personal property. This is especially reasonable when the person in question was going through a contentious divorce, had recently transitioned from a $300,000 annual salary to being unemployed and unable to pay child support, and ended up in jail because of it. Depression under these

circumstances is not surprising but being depressed does not mean a person is going to commit suicide.

And even if that were enough, nothing in the complaint alleges that the Sheriff was aware of these alleged facts. The Estate asserts that the jail monitors inmates' telephone calls, and so the Sheriff should have known that Doheny was giving away his personal property. But the Estate does not allege what property was given away or to whom, so that this Court could understand how alarming such an act would be. And regardless, the Court will not Constitutionally mandate, nor expect, upon pain of monetary damages, a local jail to surveil and report all phone calls from every inmate and detainee.

These allegations are not enough to plausibly allege that the Sheriff had any knowledge of a strong likelihood of self-harm, or that he willfully ignored such a likelihood.

Additionally, nothing in the complaint, taken as true, could plausibly show that the Sheriff failed to take reasonable measures to protect Doheny from self-harm. The Estate alleges that correctional officers sent another inmate to check on Doheny after he was late to medicine call by only ten minutes. Under the factual allegations—to the extent there are any—of this case, ten minutes is reasonable. The Estate further alleges that when the inmate realized what had happened, the inmate yelled for help, and a nurse responded immediately. The Estate alleges that the nurse was unable to remove Doheny from his bunk to perform chest compressions. On this note, the Estate takes issue with the response being by a

7

nurse and not a correctional officer. But the speculation that a correctional officer would have made any difference is not good enough. (As an aside, wouldn't a nurse, rather than a correctional officer, be the appropriate person to respond to a medical emergency?)[4] The Court is left to speculate whether the correctional officer would have been able to remove Doheny from his bunk and whether the correctional officer and nurse would have then been able to revive Doheny. Without more, this deficiency in the Estate's allegations renders implausible the causal requirement of all § 1983 claims (and specifically element four here).

Because these bare allegations and conclusions require the Court to speculate, the Estate's claim is not plausible without more.

### 2. Eighth Amendment – Deliberate Indifference

In response to the motion to dismiss, the Estate invokes the Eighth Amendment. Dkt. 31, at 5. This is error. An Eighth Amendment violation exists where prison staff is deliberately indifferent to a serious medical need. *Perry v. Sims*, No. 19-1497, 2021 U.S. App. LEXIS 6165, at *8 (7th Cir. Mar. 3, 2021). But the Eighth Amendment prohibits cruel or unusual *punishment*. That applies to prisoners serving a sentence for a criminal conviction. It does not apply to individuals incarcerated for civil contempt. *Ingraham v. Wright*, 430 U.S. 651, 668 (1977) (citing *Uphaus v. Wyman*, 360 U.S. 72, 81 (1959)). Because Thomas Doheny

---

[4] To the extent the complaint notes the allegedly diminutive size of the nurse is relevant, the Court knows of no constitutional provision requiring a correctional facility to hire Cross Fit fanatics as nurses and requiring government entities to engage in this type of hiring practice would cause other legal problems.

was incarcerated for civil contempt, the Estate's Eighth Amendment claim is dismissed with prejudice.

### 3. Overcrowding and Understaffing

The Estate also points to the jail's policy of housing detainees for Immigration and Customs Enforcement (ICE). The Estate fails to explain how these allegations support their claim, or what claim they go to. This argument does not clearly fit into any element of the failure to protect claim, and as explained above, the Eighth Amendment claim is inapplicable to civil contempt detainees. If the Estate means for those allegations to pertain to its *Monell* claim, then they cannot be relevant in absence of a constitutional injury—an injury that has not been plausibly alleged.

But regardless, all § 1983 claims require a showing of causation. *Kelly v. Municipal Courts*, 97 F.3d 902, 909 (7th Cir. 1996). The Estate's allegation that the jail houses ICE detainees resulting in understaffing and then Thomas Doheny's suicide is purely speculative. The Estate has failed to include sufficient allegations that this policy has plausibly caused any injury. The allegation, therefore, fails to state any claim. Without a constitutional violation by a state actor, there can be no *Monell* claim. *Los Angeles v. Heller*, 475 U.S. 796, 796-99 (1986).

### B. Conclusion

For the reasons above, the Sheriff's motion to dismiss [28] is granted. The Estate's claims are dismissed without prejudice. But any claim arising under the Eighth Amendment is dismissed with prejudice. The Estate must file its amended

complaint—pursuant to the requirements of Federal Rule of Civil Procedure 11—by May 10, 2021. If the Estate fails to file an amended complaint by that date, the dismissal will be with prejudice.

Date: April 6, 2021

_____
Honorable Iain D. Johnston
United States District Judge
Northern District of Illinois
Western Division